Rachel M. Dollar, CSB 199977
rdollar@smithdollar.com
SMITH DOLLAR PC
Attorneys at Law
418 B Street, Fourth Floor
Santa Rosa, California 95401
Telephone: (707) 522-1100
Facsimile: (707) 522-1101

Attorneys for Plaintiff
KENSINGTON APARTMENT PROPERTIES, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re KENSINGTON APARTMENT PROPERTIES, LLC,<br><br>Debtor | Case No. 10-73976-MEH<br><br>Chapter 11 |
| KENSINGTON APARTMENT PROPERTIES, LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>LOANVEST IX, L.P., A CALIFORNIA LIMITED PARTNERSHIP; SOUTH BAY REAL ESTATE COMMERCE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; GEORGE VAUX CRESSON, III, AN INDIVIDUAL; AND DOES 1 THROUGH 100, INCLUSIVE<br><br>　　　Defendants. | Adversary Proceeding No.: 17-04018-CN<br><br>**AMENDED OPPOSITION OF KENSINGTON APARTMENT PROPERTIES LLC TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**<br><br>Date: April 22, 2019<br>Time: 10:00 a.m.<br>Place: 1300 Clay Street, Courtroom 215<br>　　　Oakland, California<br><br>Judge: Honorable Charles Novack |



# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     RELEVANT FACTS ..........................................................................1

        A.      Payoff Demands ......................................................................1

                1.      February 2015 Payoff Demand ....................................1

                2.      October 2015 Payoff Demand ......................................2

                3.      February 2016 Payoff Demand ....................................3

        B.      Payoff of Loan .......................................................................4

        C.      Loanvest kept no records relating to the Loan Balance .....................4

III.    OBJECTIONS TO EVIDENCE ........................................................5

IV.     ARGUMENT ....................................................................................6

        A.      LOANVEST IS NOT ENTITLED TO SUMMARY
                JUDGMENT ON THE COUNTER-CLAIM ....................................6

V.      PLAINTIFF ADEQUATELY PLED BREACH OF CONTRACT ..............7

                1.      The Complaint Complies with Rule 8 and Contains
                        Sufficient Facts to Provide Notice of Plaintiff's
                        Claims ........................................................................7

        B.      THERE IS A GENUINE ISSUE OF MATERIAL FACT
                AS TO THE CHARGING AND COLLECTING OF
                COMPOUND INTEREST .............................................................9

        C.      THERE IS A GENUINE ISSUE OF MATERIAL FACT
                AS TO LOANVEST'S COMPLIANCE WITH CAL. CIV.
                CODE 2943 ...............................................................................11

                1.      Defendants cannot Established the Required
                        Elements of Res Judicata ............................................12

        D.      DEFENDANTS' ADMISSIONS AND PAYOFF
                DEMANDS CREATE A GENUINE ISSUE OF
                MATERIAL FACT AS TO THE COMPLEXITY OF THE
                ACCOUNTS ...............................................................................13

        E.      A GENUINE ISSUE OF MATERIAL FACT
                PRECLUDES SUMMARY JUDGMENT ON THE
                CONVERSION CLAIM ...............................................................16

        F.      Kensington did not Consent .........................................................17



G. AN EXPRESS CONTRACT DOES NOT PRECLUDE A COMMON COUNT ONCE PLAINTIFF HAS PERFORMED .................................................................................18

VI. CONCLUSION .............................................................................19



# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)............................................6

*Becker v. Bank of N.Y. Mellon*, No. 2:15-cv-2240-MCE-KJN PS, 2016 U.S. Dist. LEXIS 62446 (E.D. Cal. May 11, 2016) ......................................12

*Braxton-Secret v. A.H. Robins Co*., 769 F.2d 528 (9th Cir. 1985) ......................12

*Butler v. Collins*, 12 Cal. 457 (1859).......................................................................17

*Castagnino v. Balletta,* 82 Cal. 250 (1889) ...........................................................19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...................................................6, 12

*Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs*., 748 F. Supp. 2d 1145 (C.D. Cal. 2010) ....................................................................18

*Civic W. Corp. v. Zila Indus., Inc*., 66 Cal. App. 3d 1 (1977)............................14

*Crull v. GEM Ins. Co.,* 58 F3d 1386 (9th Cir. 1995).............................................7

*Daewoo Elecs. Am. Inc., v. Opta Corp*, 875 F.3d 1241 (9th Cir. 2017)..............13

*Dargahi v. Kest Invs. Co. (In re Dargahi)*, Nos. SV 03-15884-KT, SV 06-01228-KT, 2009 Bankr. LEXIS 4298 (Bankr. C.D. Cal. Nov. 17, 2009.) ....................................................................................................................11

*Deutsche Bank Nat'l Trust Co. v. E\*Trade Bank* (Oct. 17, 2018, No. A150279) ___Cal.App.5th___ (2018 Cal. App**.** Unpub. LEXIS 7063 ...........11

*Freedom Fin. Thrift & Loan v. Golden Pac. Bank*, 20 Cal. App. 4th 1305 (1993)............................................................................................................11

*Heine v. Wright*, 76 Cal. App. 338 (1926) ..............................................................18

*Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019) ..........................................7

*Jolley v. Chase Home Finance, LLC,* 213 Cal.App.4th 872 (2013)......................14

*Kawasho Internat., U.S.A. v. Lakewood Pipe Serv*., 152 Cal. App. 3d 785 (1983)...................................................................................................................19

*Loanvest I v. Bentley,* No. A144977, 2016 Cal. App. Unpub. LEXIS 279 (Jan. 12, 2016) .....................................................................................................16

*McConnell v. Merrill Lynch, Pierce, Fenner & Smith*, 21 Cal. 3d 365 (1978)......................................................................................................................9

*McKell v. Washington Mut., Inc*., 142 Cal. App. 4th 1457 (2006)....................16

*Mullis v. United States Bankr. Court*, 828 F.2d 1385 (9th Cir. 1987) ..................7



873453_3

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, Inc. 210 F3d 1099 (9th Cir. 2000)................................................................................6

*Rich & Whillock, Inc. v. Ashton Dev., Inc.,* 157 Cal. App. 3d 1154 (1984).......................................................................................18

*Roche v. Bank of Am.*, No. 12-CV-2002 W (WVG), 2013 U.S. Dist. LEXIS 95646 (S.D. Cal. July 9, 2013)........................................14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064 (9th Cir. 2003) ....................................................13

*Taylor v. Charter Med. Corp.*, 162 F3d 827 (5th Cir. 1998)...................5

*Thomas v. Hunt Mfg. Corp.*, 42 Cal.2d 734 (1954) ..............................9

*Trant v. Wells Fargo Bank, N.A.*, No. 12-cv-164-JM-WMC, 2012 U.S. Dist. LEXIS 98404 (S.D. Cal. July 12, 2012.) ...............................8

*Util. Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950 (2003) .................19

*Vella v. Hudgins*, 20 Cal.3d 251 (1977) .............................................12

*Venhaus v. Shultz*, 155 Cal. App. 4th 1072 (2007)..............................11

*Welco Elec.'s, Inc. v. Mora*, 223 Cal. App. 4th 202 (2014)..................16

*Worldwide Travel, Inc. v. Travelmate US, Inc*., No. 14-cv-00155-BAS(DHB), 2015 U.S. Dist. LEXIS 28517 (S.D. Cal. Mar. 9, 2015)............16

*Young v. Hoagland,* 212 Cal. 426 (1931) ...........................................18

**STATUTES**

California Civil Code § 1473.............................................................17

California Civil Code § 1474.............................................................16

California Civil Code § 1916.12-2.......................................................9

California Civil Code § 1916.12-3.......................................................9

California Civil Code § 2943.............................................11, 12, 13, 17

California Civil Code. § 1916.12.1.......................................................9

Federal Rule Civil Procedure 37..........................................................5

Federal Rule Civil Procedure 8............................................................7

Federal Rule of Evidence 1002............................................................5

Federal Rule of Evidence 1003............................................................5

Federal Rule of Evidence 201(b)..........................................................5



873453_3

# I. INTRODUCTION

There is no calculation whereby Loanvest IX, L.P. ("Loanvest") submitted an accurate payoff demand or received no more than was due. The payment by Landmark West LLC ("Landmark"), the co-obligor, which was accepted by Loanvest, extinguished the debt by law. But, even assuming some balance remained owing, and assuming the every fee charged was actually incurred and properly charged to Kensington Apartment Properties, LLC ("Kensington"), assuming further the correct interest rate was 20% and the Kensington Chapter 11 Plan (the "Plan") allowed for interest on the claim balance rather than the principal debt, Loanvest still demanded and was paid more than it was owed.[1] Interest on $547,217 (the claim amount) from bankruptcy filing to payoff at 20% is $590,082, resulting in a total debt of $1,135,779. Adding the fees asserted by Loanvest brings the total to $1,266,181.[2] Landmark and Kensington paid $1,361,174.10 to retire the obligation.

Yet, after having forced Kensington to pay far more than what was owed, Loanvest is overreaching and seeking, not one satisfaction of the debt, but two. Not 13% interest on the money borrowed or even the 20%, but, 40%.

# II. RELEVANT FACTS

## A. Payoff Demands

### 1. February 2015 Payoff Demand

A request for payoff demand was submitted to George Cresson by April 7, 2015 (Dollar Decl. Ex. EE 116.16-118.15, HH, PP; Lieberman Decl. ¶¶6, 7, Ex. G ) Lieberman followed up to obtain a payoff demand (Lieberman Decl. ¶8). The payoff demand was not submitted into escrow until May 27, 2015 (Dollar Decl. ¶7(d) and

---

[1] Kensington asserts that the Plan only allows interest to be calculated on the principal amount of the original promissory note (the "Note") of $484,000 and that the correct interest rate under the Plan is 13%.

[2] This calculation is simplified for purposes of illustration and does not take into account the fact that the loan principal was paid off or down by Landmark in January 2016, thereby eliminating or reducing interest accruals.

Amended Opposition to Motion for Summary Judgment

Ex. EE 110.2-12; 115.11-21, 118.21-119.6, FF; Lieberman Decl. ¶8.) The payoff demand submitted was for $929,137.64 and purported to calculate interest at 13% "per plan" (Dollar Decl. Ex EE 113.14-21) with per diem interest of $506.13. Loanvest provided no breakdown of the payoff demand until August 25, 2015 which reflected that $926,613.42 was owed on August 1, 2015 (Lieberman Decl. ¶9, Ex. J.) The demand was calculated by compounding interest monthly and charging interest on fees, which was also compounded. At 13% interest as of May 27, 2015, including the asserted legal fees, the outstanding balance would have been $641,946.60 – almost $300,000 less than the amount in the payoff demand. Per diem interest at 13% should have been $174.78 – not $506.13.

### 2. October 2015 Payoff Demand

A request for a payoff demand was submitted to Loanvest on October 1, 2015. (Dollar Decl. Ex. T 27.7-12, 27.17-28-15, U, EE 122.9-23; Lieberman Decl. ¶ 11.) On November 20, 2015, Dan Lieberman email Cresson "… I never received a completed payoff demand for Kensington, which Chicago Title sent to you in late September" and "[p]lease consider this email a formal demand for payoff of the Kensington loan." Cresson responded "You are in a better position to perform your own calculations than I am because you know precisely when you made each payment. Please read the plan, figure out when you made your payments, perform the calculation and forward payment." (Dollar Decl. Ex. LL 144.8 -148.21) MM; Lieberman Decl. ¶ 12.) Another request for payoff demand was submitted to Loanvest on November 24, 2015, which referred to the fact that no response had been received to the October 1, 2015 payoff demand. (Dollar Decl. Ex. T 28.25-10, V, EE 124.15-18.)

On December 10, 2015, 70 days after the date the payoff demand was first requested, Loanvest submitted a payoff demand for $1,070,295.43 which included $548,416.38 in default interest, $85,462,05 in fees and costs and gave credit for $110,800 in payments. (Lieberman Decl. ¶13; Dollar Decl. Ex. EE 125.11-18; NN.)



### 3. February 2016 Payoff Demand

On February 9, 2016, Old Republic Title Company submitted a request for payoff demand to Loanvest. (Dollar Decl. Ex. PP.) Lieberman and Cresson met on February 29, 2016. Lieberman told Cresson that the demand was due on March 2, 2016 and that he believed that Loanvest had already been paid in full. (Lieberman Decl. ¶16). All other communications between Lieberman and Cresson between January 15, 2016 and March 30, 2016 were in writing. (Dollar Decl. Ex. Y 9.13-10.8; Lieberman Decl. 15.)

On March 4, 2016, Dan Lieberman emailed George Cresson and advised that the 21 day period for submitting a payoff demand had passed and demanding it be submitted by Monday, March 7. (Lieberman Decl. ¶ 17, Ex. K.) On March 8, 2016, 28 days after the date the payoff demand was requested, Loanvest submitted a payoff demand to Kensington for $470,446.31 comprising the opening balance of $547,217, $548,416.38 in default interest, $85,462.05 in fees and costs, interest from January 10 to February 9 of $23,480.41, and "additional legal fees related to appeal and continued maturity default" of "$39,420." (MSJ Dollar Decl. Ex. I 10.19-13-25; J; MSJ Lieberman Decl. ¶ 20.)

On March 15, 2015, Dan Lieberman emailed Cresson demanding a correction of the payoff demand. (MSJ Lieberman Decl. 21; MSJ Dollar Decl. Ex. K 34.17-35.7, L.) On March 25, 36 days after the request for payoff demand was submitted, Cresson submitted a revised payoff demand for $446,852.31 with $169.50 in per diem interest with a spreadsheet of the underlying calculations. (Dollar Decl. Ex. K 36.16-23, M) The "post payment attorney fees" had climbed by $4,000 to $43,420 during this ten day period. Although the payoff demand purported to provide a credit for the $124,600 in bankruptcy payments made by Kensington, the demand itself was only $23,594 less than the March 8 demand.

The closing date for the sale of the property was extended at least twice due to the late submission of the payoff demand. (Lieberman Decl. 19; Reinke Decl.)



## B. Payoff of Loan

Landmark made a $5,000 payment on the loan at time its plan was confirmed. MSJ Lieberman Decl. ¶11.) On January 8, 2016, Landmark made payment of $783,604.20 to Loanvest. (MSJ Lieberman Decl. 19, Ex. E.)

Kensington made timely interim Plan payments to Loanvest of $124,600 (Cresson Decl. ¶9.) On March 30, 2016, Kensington made payment of $447,969.90 to Loanvest. A reservation of rights letters was delivered with the payoff. (Lieberman Decl. ¶ 25 and Ex. F; Dollar Decl. Ex. K 37.8-38.19.) In total, Kensington and Landmark paid Loanvest $1,361,174.10 post-petition. (Lieberman Decl. ¶26.)

The maximum total that could have been due, assuming default interest on the highest claim amount from the earliest bankruptcy filing, and assuming the legitimacy of the fees included in the payoff demands, was $1,266,181.[3]

## C. Loanvest kept no records relating to the Loan Balance

Loanvest does not and has never had a bank account. (Dollar Decl. Ex. AA 58.8-15.) All of its financial dealings are handled through the bank account of its general partner, South Bay, who has a single bank account in which it comingles its own funds with those of the multiple limited partnerships it manages. (Dollar Decl. Ex. BB 65.4-22, CC 71.22-72-12, 74.14-21.) Neither Loanvest nor its general partner, South Bay, have an accounting system, maintain a check register, or prepare financial statements. (Dollar Decl. Ex. AA 58.16-59.5; CC 73-4.18, 74.10-13.) They keep no loan level accounting records. The only way for Loanvest to determine what is owed on a loan is to go back to source documents, such as bank statements and invoices, to determine the amount of the debt, payments made and charges against the loan. (Dollar Decl. Ex. CC 74.22-75.14; DD 196.1-197.24.)

---

[3] This figure is solely for purposes of illustration. Kensington disputes that interest was due on the claim amount as opposed to the Note amount, disputes that default interest was proper, disputes that the fees and costs were actually incurred or chargeable to Kensington.



In its final payoff demand to Kensington, Loanvest included $43,420 in "post payment attorney fees." George Cresson does not know what was done to incur these fees and does not know which attorney incurred them. (MSJ Dollar Decl. Ex. O 44.10-20; P 52.3-6.) All legal invoices relating to the loan were requested in discovery yet none supporting these fees was ever received. Another approximate $20,000 of the fees was for attorneys' fees to Mark Rushin and John Sullivan but no invoices were ever produced.[4] (Dollar Decl. ¶ 7 and Ex. QQ, RR, SS, TT.) Virtually all of the remaining fees of approximately $65,000 were incurred to Wendell Rosen as part of the Landmark bankruptcy and Loanvest was denied recovery of the fees requested. (Loanvest RFJN Ex 1, 7.8-11.)

### III. OBJECTIONS TO EVIDENCE

Plaintiff objects to Request for Judicial Notice item 1, Memorandum of Decision re Loanvest Claim ("Decision"), to the extent that Defendant seeks to introduce as evidence the factual findings from the Order because they are do not constitute facts "not subject to reasonable dispute" within the meaning of Fed. Rule Evid. 201(b). *Taylor v. Charter Med. Corp.*, 162 F3d 827, 830 (5th Cir. 1998).

Kensington further objects to the admission of Exhibit 1 to the Declaration of George Cresson and specifically pages 3 and 4 of that document because is not admissible under Fed. Rule Evid. 1002 and 1003 as it is not an original and there is a genuine question on its authenticity and Fed. Rule Civ. Proc. 37(c)(1) as it was not disclosed in the defendant's Rule 26 disclosures (Dollar Decl.¶2 and Ex. S) or produced during discovery (Dollar Decl ¶ 2.) The document cannot be presented in a form that would be admissible in evidence as its authenticy is disputed and the failure to produce it during discovery has prejudiced plaintiff because it is unable to demand production of the original or obtain expert witness testimony on authenticity.

---

[4] Cresson testified that he has never destroyed any documents relating to Loanvest. (Dollar Decl. Ex. CC 70.12-20; 71.3-9.)



Amended Opposition to Motion for Summary Judgment

**IV. ARGUMENT**

"It is not enough to move for summary judgment … with a conclusory assertion that the [opposing party] has no evidence to prove his case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (J. White, concur. opn.)  The moving party must produce affirmative evidence negating an essential element of the nonmoving party's claim.  If the moving party does not meet this initial burden of demonstrating the absence of triable issues, the nonmoving party has no obligation to offer evidence to support its opposition. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, Inc. 210 F3d 1099, 1105 (9th Cir. 2000).

The court must view the evidence in the light most favorable to the opposing party: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Loanvest has not referenced or submitted any admissible evidence demonstrating that Kensington is unable to prove any essential element of any of its causes of action and has not submitted evidence negating any element of Kensington's claims.  The judgment should be denied as Loanvest has not carried its burden of production on the motion for summary judgment sufficient to shift the obligation to Kensington to come forward with evidence.

**A.    LOANVEST IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE COUNTER-CLAIM**

Kensington incorporates the Counter Motion of Kensington for Summary Judgment and Partial Summary Judgment, ECF No. 130, Memorandum of Points and Authorities, ECF No. 131, Declaration of Rachel Dollar, ECF No. 132 ("MSJ Dollar Decl.") and Declaration of Daniel Lieberman, ECF No. 133 ("MSJ Lieberman Decl.") as if fully set forth.  For the reasons therein, the Court should deny the Motion for Summary Judgment of Loanvest on their Counter Claim.



Amended Opposition to Motion for Summary Judgment

6

# V. PLAINTIFF ADEQUATELY PLED BREACH OF CONTRACT

Neither the Kensington Plan nor the Confirmation Order state or imply that the Note was terminated. *See* Memorandum of Points and Authority in Support of Counter Motion, ECF 130. Further the Deed of Trust secured payment of the $484,000 Note. (Cresson Decl. Ex 2, 2) Extinguishment of the Note would have extinguished the Deed of Trust.

### 1. The Complaint Complies with Rule 8 and Contains Sufficient Facts to Provide Notice of Plaintiff's Claims

If a motion for summary judgment challenges only the sufficiency of the opposing party's pleadings, the court should treat the motion as one for judgment on the pleadings. *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1387 n.6 (9th Cir. 1987). The court should assume the truthfulness of the material facts alleged and construe all inferences reasonably drawn from the facts in favor of Plaintiff. *Hines v. Youseff*, 914 F.3d 1218 (9th Cir. 2019) As long as the opposing party receives fair notice of the nature of the claim, the complaint need not allege the legal theory on which recovery is sought. *Crull v. GEM Ins. Co.,* 58 F3d 1386, 1391 (9th Cir. 1995).

Fed. Rule Civ. Proc. 8 requires that a claim for relief contain a short and plain statement of the claim showing the pleader is entitled to relief and the demand for relief sought.[5] Pleadings must be simple, concise and direct.

Paragraphs 9 through 14 of the First Amended Complaint ("FAC") explain the initial loan transaction and the events leading to the bankruptcy filing of Kensington. Paragraphs 15 through 20 alleged the entry of the Plan and payments thereunder. Paragraphs 21 and 22 allege the Landmark Bankruptcy and plan confirmation. Paragraphs 24 through 48 allege the payoff demands and payments.

The breach of contract claim incorporates the first 48 paragraphs of the FAC. Paragraph 50 states: "On or about December 13, 2007, at San Francisco, California,

---

[5] These asserted pleading defects should have been raised by a motion under Rule 12, but defendant has not requested relief pursuant to Rule 12. If the Court does address the purported defects with the pleadings,

Amended Opposition to Motion for Summary Judgment

Kensington and Loanvest entered into a written contract (the Promissory Note) as modified by the February 8, 2010 Amendment to Loan Documents and the Kensington Plan, and secured by the Deed of Trust." Kensington acknowledged, pled and sought recourse for the breach of the obligations that existed as a result of the Note, amendment, deed of trust and Plan. The claim then alleges the remaining required elements of the claim for breach of contract.

Reading the complaint as a whole and given the notice pleading requirements of FRCP, Defendants had notice Plaintiff is claiming breach of the post-confirmation obligation.

Loanvest also asserts that Plaintiff failed to plead the precise provision of the loan agreement that Loanvest breached[6] and failed to plead damages. The complaint asserts both breach of contract and breach of the duty of good faith and fair dealing. The complaint alleges at paragraph 55 through 57 that Loanvest demanded amounts in excess of those that were due, refused to release the security until such amounts were paid, and that Kensington paid the inflated amounts. Allegations that a lender demanded more than what was owed are sufficient to plead a cause of action for breach of contract and breach of the covenant of good faith and fair dealing. *Trant v. Wells Fargo Bank, N.A.*, No. 12-cv-164-JM-WMC, 2012 U.S. Dist. LEXIS 98404, at *5 (S.D. Cal. July 12, 2012.) Kensington was damaged (see II.B., *supra.*)

If the court determines that the pleadings are not adequate to provide notice of Plaintiffs claims, Plaintiff seeks permission to amend pursuant to FRCP 15(b) to clarify any such ambiguity or defect.

---

[6] Defendants cite *First Commercial Mortgage v. Reece*, 89 Cal.App.4th 731 (2001) without providing the pin cite. The case does not stand for the proposition for which it is cited.

8
Amended Opposition to Motion for Summary Judgment

**B.** **THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO THE CHARGING AND COLLECTING OF COMPOUND INTEREST**

Cal. Civ. Code § 1916.12-2 does not limit its provisions to a "loan" but, rather, provides: " … in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith." The claim arises solely out of post-confirmation conduct, the charging of compound interest on loan payoff, and does not give rise to *res judicata*. There is no authority for the position that compound interest charged by a creditor in violation of the usury laws is excepted due to a prior bankruptcy. Cal. Civ. Code § 1916.12-3 provides a remedy to anyone having "paid or delivered" any greater sum than so allowed.

The elements cited by defendants apply to a claim under Cal. Civ. Code. § 1916.12.1, not to a claim for violation of Cal. Civ. Code § 1916.12-2. There is no authority for the proposition that the elements of a claim of a usurious interest rate overlap the elements of a claim of compound interest. It is the *inclusion* of a usurious rate of interest in a contract which gives rise to liability while failing to include a disclosure regarding compounding is the basis of a claim under Cal. Civ. Code §1916.12-2. In *McConnell v. Merrill Lynch, Pierce, Fenner & Smith*, 21 Cal. 3d 365, 373 (1978) the court addressed both compounding and usurious interest, resolving the compounding issues based solely on the contract's failure to include a clear disclosure and considering the element of intent[7] only in analyzing claims related to a usurious rate of interest.

The Kensington Plan provides "[t]he amount of the claim shall include post-petition interest and fees pursuant to section 506(b) of the Bankruptcy Code. The

---

[7] The issue of intent is narrow in usury. The lender only needs to intend to take the amount of interest it receives. If the amount is more than the law allows, the offense is complete. *Thomas v. Hunt Mfg. Corp.*, 42 Cal.2d 734, 740 (1954)

Plan does not purport to reduce the amount of the claim in any way including, but not limited to post-petition interest and all other charges provided under the loan agreement with Debtor." (Loanvest RFJN Ex. D.) The Note, which is the "loan agreement with Debtor" provides: "[t]he outstanding principal balance of this Note shall bear interest … at the rate per annum of 13%." The default interest provision likewise provides for interest only on the "outstanding principal balance of the Note." (Lieberman Decl. Ex. 1.)

The spreadsheet provided by Loanvest with its March 25, 2016 payoff demand (MSJ Dollar Decl. Ex. M), reveals that Loanvest calculated interest, not on the outstanding principal balance of $484,000, but on the claim amount, which included pre-petition interest. This was the amount paid to Loanvest from escrow out of the sales proceeds from the Garages. (Lieberman Decl. Ex. 25.)

The interest in the payoff demand totaled $666,084.69 for the period between December 6, 2010 and January 8, 2016. Interest at the 20% default rate[8] on the outstanding principal balance for the five years and two days between those dates is $494,217.80.[9] Loanvest charged interest on the claim amount of $547,217. The Plan does not, however, provide for interest on the claim, but falls back to the Note, which provides for interest only on the outstanding principal. Charging interest on the excess claim balance, which was interest, is compounding. As the maximum Note rate was charged, this compound interest is no less than $171,866.89.[10] As Landmark paid off the full principal balance of the loan on January 8, 2016, the post-January 6 interest was charged on interest. (Loanvest RFJN Ex. 1, 7.11.; RFJN ¶1.)

---

[8]     Kensington disputes that the 20% default rate is the correct rate, however, utilizes that rate for the purposes of this Opposition.

[9]     Even calculating interest on the $547,217 claim amount only results in interest of $558,769.40 - $107,315.29 less than the amount demanded and paid.

[10]     At the non-default rate, the interest for this time period was $320,367.70 and the interest on the demand was inflated by $345,716.99.



Amended Opposition to Motion for Summary Judgment

10

## C. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO LOANVEST'S COMPLIANCE WITH CAL. CIV. CODE 2943

Cal. Civ. Code § 2943 defines a payoff demand statement as: "[a] written statement, prepared in response to a written demand made by an entitled person or authorized agent, setting forth the amounts required as of the date of preparation by the beneficiary, to fully satisfy all obligations secured by the loan that is the subject of the payoff demand statement." It creates a duty to provide a timely and accurate payoff statement. *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1080 (2007). Along the same lines, we conclude that E*Trade cannot avoid its responsibility for how the payoff amount was calculated in its own payoff demand statement. *See also Deutsche Bank Nat'l Trust Co. v. E*Trade Bank* (Oct. 17, 2018, No. A150279) ___Cal.App.5th___ (2018 Cal. App. Unpub. LEXIS 7063, at *30) a creditor cannot avoid its responsibility for how the payoff amount was calculated in its own payoff demand statement.

The purpose of Cal. Civ. Code § 2943 was to shift the responsibility for calculating the amount to satisfy the loan from the borrower to the lender. *Freedom Fin. Thrift & Loan v. Golden Pac. Bank*, 20 Cal. App. 4th 1305, 1315 n.3 (1993). "A secured lender ignores a request for a payoff demand statement at its peril." *Dargahi v. Kest Invs. Co. (In re Dargahi)*, Nos. SV 03-15884-KT, SV 06-01228-KT, 2009 Bankr. LEXIS 4298, at *8 (Bankr. C.D. Cal. Nov. 17, 2009.) No court has ever held that tender is a prerequisite to a claim under Cal. Civ. Code §2943.[11]

Loanvest failed to respond within 21 days, to Kensington's payoff demands of March 30, 2015, October 1, 2015 and February 9, 2016. (*See* Section II.A, *supra*.) Multiple follow up requests were made and, on one occasion, George Cresson told Dan Lieberman to figure it out himself. *Id.* Failure to respond despite follow-up requests is sufficient to show willfulness under the statute. *Becker v. Bank of N.Y.*

---

[11] The comment cited by Defendants involved the time before a formal payoff demand had been made.

Amended Opposition to Motion for Summary Judgment

*Mellon*, No. 2:15-cv-2240-MCE-KJN PS, 2016 U.S. Dist. LEXIS 62446, at *10 (E.D. Cal. May 11, 2016). A person's state of mind is generally a factual issue and inappropriate for resolution by summary judgment. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

The evidence submitted by Loanvest does not support the characterization of such evidence in the brief. The evidence and argument give rise to an inference that the payoff demand was not timely submitted, as no extension would have otherwise been necessary. The emails do not provide any extension of the 21 day deadline or support the assertion that the deadline was extended with the title company's "knowledge and express permission." Further, this evidence would bear only on whether the failure was willful as the statute does not provide for extension of the deadline. A genuine issue of material fact exists on the issue of the willful failure.

Loanvest has not borne its burden of production on the issue of damages. "It is not enough to move for summary judgment … with a conclusory assertion that the [opposing party] has no evidence to prove his case." *Celotex Corp. v. Catrett*, *supra*, 477 US at 326, 106 S.Ct. at 2555 (J. White, concur. opn.) Actual damages are not an element of a claim under Cal. Civ. Code § 2943 which provides for a civil penalty whether or not actual damages are sustained.[12] The additional interest accrued when the closing date for the sale was continued due to failing to submit timely demands are, however, actual damages. (Lieberman Decl. 19.)

## 1. Defendants cannot Established the Required Elements of Res Judicata

"The burden of proving that the requirements for application of res judicata have been met is upon the party seeking to assert it as a bar or estoppel." *Vella v. Hudgins,* 20 Cal.3d 251, 257 (1977). "'Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between

---

[12] There is also no tender requirement to maintain an action for or obtain consequential damages for violation of Section 2943 and no court has so held.

parties.' (citations omitted.)" It bars claims that were asserted or could have been asserted in a previous action when the claims arise from the same transactional nucleus of facts. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)[13] The court cannot alter the liabilities of a non-debtor. *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985.)

This action does not involve the same claim as the underlying case in Landmark and Kensington did not and could not have brought its claims in the Landmark action. The Court specifically limited its decision to Landmark's rights and obligations. "… this court is only determining the amount that Landmark owes Loanvest under its confirmed Chapter 11 plan of reorganization." (Cresson RFJN Ex. 1, 2.9-10.) The court also considered an argument that Defendants prevented Landmark from paying its obligation before October 1, 2015 finding only that a demand was submitted into the Kensington Garages escrow, which is not disputed, and specifically stating that if the amount of the demand was in issue, Kensington should seek relief in its own bankruptcy case (Cresson RFJN Ex. 1, 8.6-15). Here, Kensington has sued for breach of Cal. Civ. Code 2943, asserting that timely and accurate demands were not submitted. Kensington could not have raised these claims in the Landmark bankruptcy as the court specifically refused to take evidence or consider any claims concerning Kensington, and that determination cannot now be held to have preclusive effect.

## D. DEFENDANTS' ADMISSIONS AND PAYOFF DEMANDS CREATE A GENUINE ISSUE OF MATERIAL FACT AS TO THE COMPLEXITY OF THE ACCOUNTS

A claim for an accounting may be brought to compel the defendant to account to the plaintiff for money or property where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a

---

[13] Defendants incorrectly cite to *Daewoo Elecs. Am. Inc., v. Opta Corp*, 875 F.3d 1241 (9th Cir. 2017), again, without pin cite. *Daewoo* was applying New Jersey law. *Id.* at 1244.

fixed sum is impracticable. *Jolley v. Chase Home Finance, LLC,* 213 Cal.App.4th 872, 910 (2013). In *Civic W. Corp. v. Zila Indus., Inc*., 66 Cal. App. 3d 1, 14 (1977), the court denied motion for summary judgment and ordered trial based on voluminous transactions, discrepancies between the amount claimed due by a party at various times during the litigation and retention of a balance after sale of assets. A motion to dismiss a claim for an accounting was denied in an action for an accounting of a home mortgage account, with the court finding the account was complicated based on an unclear account history and allegations of numerous accounting errors by the lender. *Roche v. Bank of Am*., No. 12-CV-2002 W (WVG), 2013 U.S. Dist. LEXIS 95646, at *25 (S.D. Cal. July 9, 2013).

Cresson claimed that the calculations were complicated (Dollar Decl. Ex. HH.) Neither Loanvest nor South Bay kept loan level financial records (*See* Section II.C., *supra*.) Documents supporting the fee charges were not produced in discovery. Plaintiff cannot determine the amount that Loanvest owes it without an accounting.

The payoff demands conflict. The May 27, 2015 payoff demand asserted an outstanding balance of $929,137.64 at 13% interest. On December 12, 2015, the demand was $1,070,295.43 at 20% interest – only $141,157 higher despite including $85,000 in fees and an increased interest rate. On March 8, 2016, it was $470,466.31 ($1,241,287.14 before crediting the Landmark payment.) The final demand on March 25, 2016 was $446,852.31 ($1,217,673.14 before crediting the Landmark payment.) Although the March 25, 2016 payoff demand purports to give credit for the $124,600 in post-petition payments made by Kensington not credited on the March 8, 2016 payoff demand, the demand was only reduced by $23,614.

A significant portion of the funds claimed in the payoff demand were for legal fees. At deposition, Cresson could not recall what the legal fees on the payoff were for or even who performed the services (Dollar Decl. Ex. WW 14.7-16, 15.15-19, 17,

Amended Opposition to Motion for Summary Judgment

14

23-18-9, 19.8-15.)[14]   Between December 2015 and March 30, 2016 there was virtually no activity except discussions between the parties, yet the payoff demand submitted on March 8, 2016 included $39,240 in "[a]dditional legal fees related to appeal and continued maturity default."[15]  (MSJ Dollar Decl. Ex J.)   The appeal was in the Landmark case.  By March 25, 2016, the amount had increased to $43,240 and recharacterized as "[p]ost [p]ayment attorney fees." (MSJ Dollar Decl. Ex M.) Wendell Rosen invoices produced by Loanvest do not support these amounts.  No invoices of Stephen Finestone covered the relevant time periods.  No invoices of Mark Rushin or John Sullivan were ever produced.[16] (Dollar Decl. ¶ 7, Ex. TT.)

Virtually all fees included on the payoff demand to Kensington were incurred in the Landmark hearing in November 2015 and should have been submitted for approval in Landmark.[17] The right to the remedy of accounting should be determined after trial on the merits of the remaining claims.

[14]   Cresson was testifying individually and as 30(b)(6) designee for Loanvest and South Bay (Dollar Decl. Ex. UU, VV.)

[15]   George Cresson doesn't recall what the post-payment attorney fees were, however, these fees were not included on the December 2015 payoff demand and Landmark paid its obligation on January 8, 2016.  (MSJ Dollar Decl. Ex. P 52.3-6)

[16]   Sullivan testified he has not submitted invoices in a long time. (Dollar Decl. Ex. W 22.18-25.) He spent a total of about 40 hours at $300 per hour ($12,000) performing services related to Kensington between the origination of the loan in 2007 and March 2016.  Other than his testimony that he believed he had conversations about the ramifications of the Kensington bankruptcy, all of the work that Sullivan performed consisted of drafting a 'forbearance agreement' in 2009 or 2010 (prior to the bankruptcy filing) and preparing an acceleration letter.  (Dollar Decl. Ex. X 112.25-115.14.)  The amendment to the loan which extended the due date was entered into pre-filing (Cresson Decl. Ex. Collection of these pre-petition sums on payoff by Loanvest was a violation of the discharge injunction.

[17]   The Wendell Rosen fees were expressly disallowed by the court in the Landmark case because the court could not determine that they were reasonable (Decision, 7.8-11.)

Amended Opposition to Motion for Summary Judgment

### E. A GENUINE ISSUE OF MATERIAL FACT PRECLUDES SUMMARY JUDGMENT ON THE CONVERSION CLAIM

Cases for conversion of money typically involve funds held for others because one element of the tort is that a specific and identifiable sum must be involved and most such cases involve trustee type relationships, but this is not an element of a conversion claim. (*See Loanvest I v. Bentley,* No. A144977, 2016 Cal. App. Unpub. LEXIS 279, at *13-16 (Jan. 12, 2016) where the claim for conversion arose from payment of attorneys' fees out of the sales proceeds from the sale of real property. The court stated that "Loanvest's cause of action fits within the scope of a traditional conversion action to recover tangible personal property: a definite sum of money.") "There is no requirement that the [specific sum of] money have been held in trust—only that it be misappropriated." *Welco Elec.'s, Inc. v. Mora*, 223 Cal. App. 4th 202, 216 (2014). In *Welco*, "the court distinguished between a situation where a defendant's action was akin to theft, and situations involving a dispute over a bill, e.g., disputes arising regarding the quality of goods purchased, fault concerning medical treatment, or the appropriateness of legal bills." *Worldwide Travel, Inc. v. Travelmate US, Inc*., No. 14-cv-00155-BAS(DHB), 2015 U.S. Dist. LEXIS 28517, at *23-26 (S.D. Cal. Mar. 9, 2015)

*McKell v. Washington Mut., Inc*., 142 Cal. App. 4th 1457 (2006) is not applicable. In *McKell*, plaintiffs asserted that Washington Mutual charged plaintiffs more for underwriting, tax services and wire transfer fees in connection with home loans, than the amount paid to providers. *Id*. at 1465-1466 The *McKell* case was essentially a dispute over a bill for services. That is not the case here. Plaintiff asserts that the entire amount demanded by Loanvest was not due to it. Cal. Civ. Code § 1474 provides: "Performance of an obligation by one of several persons who are jointly liable under it, extinguishes the liability of all." On December 3, 2015, the court determined the amount for Landmark to pay the obligation of the underlying promissory note in full as $773,796.83. (Loanvest RFJN Ex. 1, 7.11.) This amount

specifically included the entire outstanding principal balance of the Note. (RFJN 1.) Landmark paid this sum, along with after accrued interest, on January 8, 2016. This payment was the performance of the obligation by one of several persons jointly liable and the payment paid off the principal and extinguished the obligation. Loanvest accepted the performance which also caused extinction of the obligation pursuant to Cal. Civ. Code § 1473. Kensington had no remaining obligation to Loanvest and its continuing assertion of a security interest in Kensington's property and refusal to reconvey without further payment was wrongful.

Loanvest had a secured interest in real property and had a statutory duty under Cal. Civ. Code § 2943 to provide an accurate payoff demand. Instead of doing so, they demanded fees not incurred, charged compound interest and refused to release the property from the security interest unless they were paid the demand. Calculated properly Kensington owed nothing after the payoff by Landmark. The fees charged have never been substantiated. Kensington's efforts to reason with Loanvest failed and, ultimately, to comply with its contractual obligations to the buyer of the Garages, Kensington paid under protest. The requirement is that an actual identifiable sum be involved. Here, Kensington alleges that the entire March 30, 2016 payment to Loanvest was not due and that Loanvest was paid from the sales proceeds of the Garages, on its secured debt, as the property could not otherwise be sold. There is a genuine issue of material fact as to whether Loanvest manufactured the fees.

## F. Kensington did not Consent

A property subject to a deed of trust cannot be transferred without paying off the secured party pursuant to their demand. The sales proceeds in escrow had to be paid over to Loanvest on its demand or the property could not have been sold.

…[C]onsent, in law, is more than a mere formal act of the mind. It is an act unclouded by fraud, duress, or sometimes even mistake." *Butler v. Collins*, 12 Cal. 457, 463 (1859). "[W]here, by reason of the peculiar facts, a reasonably prudent man



finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it." *Young v. Hoagland,* 212 Cal. 426, 431 (1931). In *Heine v. Wright*, 76 Cal. App. 338, 342-343 (1926) the court found no consent where defendants to a lawsuit deposited monies into a bank account to obtain release of writ of attachment. The defendants had contended all along that the underlying suit was without merit, and the court found the deposit was not a free and voluntary act that would deprive them of their right to later complain.

Loanvest received the amount of its payoff demand because when the property was sold, Loanvest had a recorded deed of trust. Kensington was contractually obligated to sell the property. The doctrine of economic duress is supported by the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. *Rich & Whillock, Inc. v. Ashton Dev., Inc.,* 157 Cal. App. 3d 1154, 1158 (1984). Prior to selling the property, Dan Lieberman attempted to obtain a more reasonable payoff demand, even though Kensington asserted at all times that the Landmark payoff had extinguished the debt. Cresson revised the payoff demand but it was still higher than any amount that could have been due. Lieberman sold the property and the sales proceeds were paid to Loanvest from escrow along with a letter of protest. Whether Kensington acted reasonably given the situation is a question of fact.

## G.   AN EXPRESS CONTRACT DOES NOT PRECLUDE A COMMON COUNT ONCE PLAINTIFF HAS PERFORMED

A claim for money had and received is available to recover money paid by mistake, undue duress, oppression or where an undue advantage was taken of plaintiff's situation whereby money was exacted to which defendant had no legal right.')." *Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.*, 748 F. Supp. 2d 1145, 1175-76 (C.D. Cal. 2010). Any claim for a sum of money due is



recoverable by common count and it is immaterial whether the original transaction was an express contract, an implied in fact contract or a quasi-contract. *Kawasho Internat., U.S.A. v. Lakewood Pipe Serv*., 152 Cal. App. 3d 785, 793 (1983).

The existence of an express contract does not preclude a claim for recovery under a common count unless the contract is still executory as to plaintiff's performance. Once the contract has been executed by the plaintiff and nothing remains but the payment of the price in money, pleading by way of common count for money had and received is permissible. *Castagnino v. Balletta,* 82 Cal. 250, 258 (1889). A claim for refund of overcharges can be the basis for a common count for money had and received. *Util. Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950, 958 (2003).

## VI. CONCLUSION

Defendants did not carry their burden on summary judgment of showing that Plaintiff has no evidence to support its claims. There is a genuine dispute of material fact on all causes of action and defendants are not entitled to summary judgment.

Dated: April 10, 2019

SMITH DOLLAR PC


By  /s/
Rachel M. Dollar
Attorneys for KENSINGTON
APARTMENT PROPERTIES, LLC

Amended Opposition to Motion for Summary Judgment

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SONOMA

     I am employed in the County of Sonoma, State of California. I am over the age of 18 and not a party to the within action. My business address is 418 B Street, Fourth Floor, Santa Rosa, CA 95401.

     On April 10, 2019, I served the foregoing documents described as

**AMENDED OPPOSITION OF KENSINGTON APARTMENT PROPERTIES LLC TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

on all interested parties in this action by:

[XX] **BY ELECTRONIC TRANSMISSION** - I transmitted a PDF version of these documents by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) indicated.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 10, 2019, at the address above.

/s/_____
Megan Jolicoeur



1

SERVICE LIST

2

*In re KENSINGTON APARTMENT PROPERTIES, LLC v. 10-73976-MEH*

3
United States Bankruptcy Court, Northern District of California, Case No.17-04018-CN

4

5

6
George Cresson
237 Kearny Street, #158
San Francisco, CA 94108

In Pro Se George Vaux Cresson, III
Email: vauxiii@yahoo.com

7

8
CLARK HILL LLP
Jeffrey H. Belote
One Embarcadero Center
Suite 400
San Francisco, CA 94111

Co-counsel for Plaintiff Kensington
Apartment Properties, LLC
Tele: (415) 984-8500
Fax: (415) 984-8599
Email: JBelote@ClarkHill.com

9

10

11
Mark Rushin
237 Kearny Street
#158
San Francisco, CA 94108

Defendants Loanvest IX, L.P. and South Bay
Real Estate Commerce Group, LLC
Telephone:  (415) 279-5271
Facsimile:
Email:       mrushinfs@yahoo.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



829330

- 2 -