

Entered on Docket
August 19, 2019
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes the order of the Court.
Signed: August 19, 2019

_____
**Charles Novack
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>KENSINGTON APARTMENT PROPERTIES, LLC,<br><br>    Debtor. | Case No. 10-73976 CN<br><br>Chapter 11 |
| KENSINGTON APARTMENT PROPERTIES, LLC,<br><br>    Plaintiff,<br>vs.<br><br>LOANVEST IX, L.P., SOUTH BAY REAL ESTATE COMMERCE GROUP, LLC, AND GEORGE CRESSON<br><br>    Defendants. | Adversary No. 17-04018<br><br>**FINAL ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND ORDER SETTING CONTINUED STATUS CONFERENCE** |

    The parties in this adversary proceeding have cross-moved for summary judgment or summary adjudication (the "Summary Judgment Motions"). On July 2, 2019, this court issued a tentative decision regarding the Summary Judgment Motions and heard further argument on August 5, 2019. Having considered the parties' arguments, this court issues the following order granting in part and denying in part the Summary Judgment Motions.

    The summary judgment standard is well established. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is

1

entitled to judgment as a matter of law." Fed. R.Civ. P. 56(a), applicable here by Fed. R. Bankr. P. 7056. The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See *Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224,1244-45 (E.D.Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted.).

Finally, if a court does not grant all of the relief requested by a summary judgment motion, it "may enter an order stating any material fact - including an item of damages or other relief - that is not genuinely in dispute and treat the fact as established in the case."

**Defendants' Summary Judgment Motion**

Defendants have moved for summary judgment against each claim for relief in Plaintiff's first amended complaint.

Plaintiff Kensington Apartment Properties, LLC ("Kensington") asserts that defendant Loanvest IX, L.P. ("Loanvest") breached the terms of Kensington's confirmed Chapter 11 plan by submitting an inflated payoff demand into the March 30, 2016 refinance escrow of its real property located at 2601 East 20th Street, Oakland, California. This court analyzed the underlying secured debt in its December 2, 2015 decision in the Landmark Chapter 11 case (the "December 2nd Memorandum Decision"). The December 2nd Memorandum Decision establishes the following, undisputed facts: Kensington and Landmark borrowed $484,000 from Loanvest in December 2007

2

(the "Loanvest Note"). The Loanvest Note called for monthly, interest-only payments with the principal balance due on January 2, 2010. The Loanvest Note carried a 13% interest rate, with a default interest rate of 20%, and authorized Loanvest to recover reasonable attorney's fees "expended or incurred by the holder in connection with the enforcement of the holder's rights and/or collection of any amounts that become due to the holder under this Note...." Kensington secured the Loanvest Note with a senior deed of trust against real property located 2601 East 20th Street in Oakland (the "Parking Garage"), and Landmark secured the Note with a junior deed of trust against real property located at 3640 Grand Avenue in Oakland. Landmark and Kensington were co-obligors under the Loanvest Note with joint and several liability. The Loanvest Note was governed by California law.

Kensington and Landmark did not pay off the Loanvest Note in January 2010, and the parties extended its maturity date to November 1, 2012. Kensington and Landmark thereafter defaulted, and Loanvest declared the Note immediately due and payable (by letter dated November 29, 2010), and later recorded a notice of default and notice of trustee's sale. Kensington filed its Chapter 11 on December 6, 2010, and Landmark filed its own Chapter 11 case on April 19, 2011.

Kensington confirmed its Chapter 11 plan by order dated August 3, 2011 (the "Kensington Plan"), and Landmark confirmed its second amended Chapter 11 plan by order dated August 31, 2012 (the "Landmark Plan"). While both plans provide for the Loanvest Note, Kensington and Landmark's treatment of it differed. The Kensington Plan (pursuant to the terms of the "Loanvest Amendment to Debtor's First Amended Chapter 11 Plan As Modified," filed on July 5, 2011) states that Loanvest's claim "shall be treated as fully secured and paid:

1. $10,000 on account within 15 days of the Effective Date;
2. $2,100 per month for a period of 48 months from the Effective Date; the Claim shall be paid in full within 48 months after the Effective Date.
3. Property taxes on the subject collateral shall be paid on a current basis.

The amount of the claim shall include post-petition interest and fees pursuant to section 506(b) of the Bankruptcy Code. The Plan does not purport to reduce the amount of the claim in any way, including, but not limited to, post-petition interest and all other charges provided under the loan

3

**SUMMARY JUDGMENT ORDER**

agreement with the Debtor. Any deficiency between the payments during the 48 months following the Effective Date and the principal and interest amounts that the Holder is entitled to during such time shall be added to the unpaid principal balance to be paid at the end of the plan term. Pending payment in full as provided herein, [Loanvest] shall retain its lien against the Garages and, upon fifteen days written notice to the Debtor and his counsel, shall be free to enforce its state law remedies to foreclose its Allowed Secured Claim if not paid as provided herein. The Debtor, may, at any time, prepay in whole or in part, [the Loanvest Note], without a prepayment fee." [1]

In February 2016, Landmark refinanced its secured debt against its Grand Avenue property, and paid Loanvest (consistent with the holding of the December 2nd Memorandum Decision) $783,604.20, which fully satisfied *Landmark's* obligation to Loanvest under its Chapter 11 plan. As stated above, Landmark's Chapter 11 plan treatment of the Loanvest Note differed significantly from its treatment under the Kensington Chapter 11 plan. The parties could not agree on how to apply the Landmark plan, and this court resolved that dispute with its December 2nd Memorandum Decision. The parties now dispute the amount due Loanvest under *Kensington's* Chapter 11 plan.

On March 30, 2016, Kensington closed a refinance escrow for its Parking Garage and paid, under protest, $447,869.90 to Loanvest on its secured claim. Kensington asserts that this amount was significantly inflated. It contends that Loanvest miscalculated its payoff amount by 1) using the Loanvest Note's 20% default interest (rather than the 13% non-default interest rate); 2) compounding interest in contravention of California's usury laws; and 3) demanding payment of attorney's fees that were unrelated to the collection of the secured claim.

Loanvest appears to contend that it is entitled to the default interest rate amount and all of the attorney's fees included in its payoff demand, and that since the Loanvest Note was negotiated/arranged by a licensed real estate broker, it was exempt from California's usury prohibitions. Curiously, despite arguing for summary judgment on the breach of contract claim (i.e.,

---

[1] The Kensington Plan also generally provided that "Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflicts of law thereof."

that it accurately calculated its Kensington escrow payoff demand, Loanvest alleges in its counter-claim that Kensington is in default of its plan, and that Loanvest is still owed substantial sums on its claim.[2]

**1) Breach of Contract Claim**

Defendants' summary judgment motion as to the breach of contract claim is **DENIED**. Triable issues of fact exist regarding whether Loanvest accurately calculated its payoff demand. When this court analyzes George Cresson's emails to the title company and the settlement statement, it cannot determine how Loanvest calculated the interest due and whether the attorney's fee component of the payoff demand is correct. Cresson himself could not explain the attorneys' fee component of Loanvest's escrow demand.[3]

2.  **Usury Claim.** Section 2 of the Usury law (Cal. Civ. Code §1916.12-2) prohibits the compounding of interest unless an "agreement to that effect is clearly expressed in writing and signed by the party to be charged." While Loanvest has demonstrated that the parties employed a licensed real estate broker to arrange/negotiate the underlying Loanvest Note, it has not presented any legal authority that this exempts it from this provision of California's Usury law. *See*, *e.g.*, *Wishnev v. Northwestern Mut. Life Ins. Co.*, 880 F.3d 493 (9th Cir. 2018); *Martin v. Metro Life Ins. Co.*, 179 Fed.Supp. 3d 948, 953 (N.D.Cal. 2016). Moreover, if the prohibition against compound interest does apply, Exh. M to the Dollar declaration and various Cresson emails create a triable issue of fact that Loanvest compounded interest, particularly since Loanvest may have used its Chapter 11 claim amount as the base from which to start calculating the interest that accrued post-petition and post-confirmation. Accordingly, the Defendants' summary judgment motion is **DENIED** as to this claim for relief.

---

[2] If so, why did Loanvest shortchange itself when it submitted its Kensington escrow payoff demand?

[3] This holding does not mean, however, that Loanvest is not obligated to credit Landmark's March 30, 2016 refinance escrow payment to it when determining the amount due under the Kensington Plan. As stated *infra*, there is no triable issue of fact on this question, and Kensington is entitled to that credit.

3. **Violation of § 2943 of California Civil Code.** Summary judgment as to this claim for relief is **DENIED**. Section 2943 requires a beneficiary under a secured note to prepare and deliver a written payoff demand to the person demanding it within 21 days of the receipt of the demand. The evidence indicates that Kensington and its title company made several demands for payoff statements from Loanvest, and there are triable issues regarding whether Loanvest timely provided payoff demands.

4. **Conversion Claim.** Kensington's conversion claim arises from its allegation that Loanvest's March 2016 payoff demand, which it paid under protest, was excessive. A generalized claim for money is not actionable as conversion. *Vu v. Cal. Commerce Club*, 58 Cal.App.4th 229, 235 (1997). If, however, there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment," a conversion claim exists. *McKell v. Wash.Mut. Inc.*, 142 Cal.App. 4th 1457, 1491 (2006). The *McKell* case also holds that a claim based on an overpayment of money is not conversion. When distilled to its basics, Kensington asserts that it overpaid Loanvest. Accordingly, summary judgment is **GRANTED** in favor of Defendants on the conversion claim for relief.

5. **Accounting Claim**. An action for an accounting may be brought to compel the defendant to account to the plaintiff for money or property (1) where a fiduciary relationship exists between the parties, or (2) where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable. (5 Witkin, Cal. Procedure, supra, Pleading, § 819, p. 236.) "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." (Teselle v. McLoughlin (2009) 173 Cal.App.4th 156, 179 [92 Cal. Rptr. 3d 696].) *Jolley v. Chase Home Fin. LLC*, 213 Cal.App.4th 872, 910 (2013). There is no evidence that a fiduciary relationship existed between Loanvest and Kensington, and, despite Loanvest's very informal bookkeeping methods, Kensington has not presented evidence that creates a triable issue of fact that the accounting is so complicated as to necessitate this form of relief. Accordingly, the court **GRANTS** Defendants' motion for summary judgment on this claim.

6. **Money Had and Received Claim**. Money had and received is a common count which, under California law, is not a specific claim but is instead a form of pleading used to aver the existence of monetary indebtedness. A cause of action for money had and received exists when a plaintiff alleges that a defendant is indebted to the plaintiff for a certain sum of money had and received by defendant for the use of plaintiff. *Avidor v. Sutter's Place, Inc.,* 212 Cal.App.4th 1439, 1454 (Cal. Ct. App. 6th 2013)(citations omitted). The claim is viable wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter. *Ibid.* The elements of a money had and received claim are 1) defendant received money, 2) which money was received for plaintiff's use, and 3) defendant is indebted to plaintiff. *Pegues v. Raytheon Space & Airborne Sys.,* 2018 U.S. Dist. LEXIS 225463 (C.D. Cal. 2013). A claim for money had and received can be based upon money paid by mistake, money paid pursuant to a void contract, or performance by one party of an express contract. *Monster Film Ltd. V. Galloping Illusions Pty Ltd.,* 2018 U.S. Dist. LEXIS 115762 (C.D. Cal. 2018), citing *Utility Audit Co. V. City of Los Angeles,* 112 Cal.App.4th 950, 958 (2003). In an action on an express contract, a claim for money had and received is permitted where there has been a total failure of consideration, where nothing of value has been received under the contract by the party seeking restitution. *Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal.App.4th 221 (2014)(citing cases). Kensington's claim fails because Loanvest did not receive the escrow funds for Kensington's "use." *See Haskins v. Symantec Corp.,* 654 Fed. Appx. 338 (9th Cir. 2016). Additionally, there has not been a total failure of consideration. Accordingly, Defendants' motion for summary judgment on this claim for relief is **GRANTED**.

**Plaintiff's Summary Judgment Motion**

Loanvest's counterclaim asserts that Kensington breached the Kensington Plan by "failing to pay all amounts due and owing under said Plan. [¶] As of the date of the filing of this Counter-Claim, amounts remain due and owing from Kensington to Loanvest under the terms of the Plan." Loanvest apparently contends that it was not obligated to credit Kensington with its receipt of the Landmark escrow proceeds, and that it is, to put it bluntly, entitled to a double recovery because the Kensington Plan did not provide for such a credit. Kensington argues that it is entitled to summary

7

judgment based on the terms of the Kensington Plan and on estoppel grounds. The court **GRANTS** Kensington's motion for summary judgment. A "Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted accordingly to the rules governing the interpretation of contracts." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004). Language in a contract is not made ambiguous simply because the parties fail to agree on its interpretation. *See Boudreau v. Borg-Wartner Acceptance Corp.*, 616 F.2d 1077, 1079 (9th Cir. 1980). California provides the controlling law for interpreting the Kensington Plan (and, to the extent necessary, the Loanvest Note). It is a well-established maxim of contractual interpretation that a contract is ambiguous if it is "capable of more than one reasonable interpretation." *Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998). Where a contract is ambiguous, "it is the court's task to determine the ultimate construction to be placed on ambiguous language by applying the standard rules of interpretation in order to give effect to the mutual intention of the parties." *Id*. at 286. Moreover, this court must provide an interpretation that will make an agreement operative, definite, reasonable, and capable of being carried into effect, and must avoid an interpretation that would make it harsh, unjust or inequitable. *City of El Cajon v. El Cajon Police Officers' Assn.*, 49 Cal.App. 4th 64, 71 (1996). To accomplish this, the court cannot ignore any language or make any sentence or clause superfluous.

The Kensington Plan's treatment of Loanvest's claim is not ambiguous. The Kensington Plan incorporates the Bankruptcy Code's definition of the term "claim.[4]" Bankruptcy Code §101(5) defines the word "Claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." Loanvest's claim arises from the Loanvest Note and deed of trust. Kensington was required to fully satisfy the claim within 4 years of the effective date, and was obligated to make certain monthly

---

[4] See § 12.13 of the Kensington Plan.

payments during that span. The Kensington Plan further stated that "[a]ny deficiency between the payments during the 48 months following the Effective Date and the principal and interest amounts that [Loanvest] is entitled to during such time shall be added to the unpaid principal balance to be paid at the end of the plan term." By definition, this language requires that the parties and this court read the underlying Loanvest Note to determine the applicable interest rate, the reimbursable attorney's fees and costs, and the "unpaid" principal balance. The Loanvest Note provides the interest rate, contains an attorney's fee clause, and also identifies Landmark as a co-obligor. California law provides that a payment by a co-obligor reduces the amount of the claim that a creditor may assert. *See*, *e.g.*, Cal. Civ. Proc. § 877; *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823 (Cal. 2015); *Brawley v. J.C. Interiors, Inc.*, 161 Cal. App. 4th 1126, 1133-34, 74 Cal. Rptr. 3d 832 (2008); *Tavagilone v. Billings,* 4 Cal. 4th 1150, 1159 (Cal. 1993); *May v. Miller*, 228 Cal. App. 3d 404, 409-10, 278 Cal. Rptr. 341 (1991); *Syverson v. Heitmann*, 171 Cal. App. 3d 106, 110-11, 214 Cal. Rptr. 581 (1985). The Kensington Plan does not preclude a third party (e.g. Landmark) from prepaying Kensington's obligation, and it also does not contain a provision eliminating their co-obligor status.[5] As a general proposition, confirmation of a Chapter 11 plan does not alter the underlying liability of a co-obligor without an express provision to the contrary. *In re Ramco-Remodel Am. Corp.*, 536 B.R. 206, 211-12 (Bankr. W.D. Tenn. 2015).

Landmark paid $783,604.20 to Loanvest under its own plan's treatment of the Loanvest Note. As a result, Loanvest must credit Kensington's Plan obligation with this amount. Any other interpretation of the Loanvest Amendment would be "harsh, unjust or inequitable."

Finally, Kensington objected to this court's tentative determination that the applicable interest rate was the 20% default rate under the Loanvest Note. The court withdraws its tentative determination regarding the applicable interest rate. The court will conduct a continued status conference in this adversary proceeding on **September 16, 2019** at **10:00 a.m.** in Courtroom 215 of

---

[5] The few cases that this court located regarding the impact of joint obligor payments support this conclusion. Whether one relies on the reduction-of-claim approach in *In re Doctors Hosp. of Hyde Park, Inc.*, 494 B.R. 344 (Bankr. N.D. Ill. 2013) - a case decided under Illinois and New York law - or Judge Carlson's holding in *In re Del Biaggio*, 496 B.R. 600 (Bankr. N.D. Cal. 2012), a creditor is not entitled to a double recovery. *See also* §293 Restatement 2nd of Contracts.

9

**SUMMARY JUDGMENT ORDER**

the United States Bankruptcy Court, 1300 Clay Street, Oakland, California.

**\*\*\* END OF ORDER \*\*\***

# COURT SERVICE LIST

Recipients are ECF participants